[Nos. 11329 and 11330. In Bank. — May 28, 1886.]

COUNTY OF SAN MATEO, PETITIONER, *v.* D. J. OULLAHAN ET AL., RESPONDENTS.

JOHN ROONEY, PETITIONER, *v.* EDWARD C. MARSHALL ET AL., RESPONDENTS.

PUBLIC REVENUE — DELINQUENT TAXES — MONEY RECEIVED BY ATTORNEY-GENERAL ON ACCOUNT — REVIEW OF JUDGMENT OF CIRCUIT COURT. — The applications were for writs of mandate to compel the respondent John P. Dunn, as state controller, to certify, and the respondent D. J. Oullahan, as state treasurer, to receive into the state treasury certain sums of money in the possession of the respondent Marshall. The money in question was collected by him, as attorney-general, in certain actions brought by the state to recover delinquent taxes. The actions were originally brought in the state courts, and were properly transferred therefrom to the Circuit Court of the United States. The money was paid to the attorney-general by the defendants in such actions, on account of the taxes sued for, in pursuance of a stipulation of the parties and the judgment and orders of the Circuit Court. *Held*, that the validity of the judgment and orders could not be reviewed in this proceeding.

ID. — PAYMENT OF MONEY INTO TREASURY. — *Held further*, that the money received by the attorney-general, although less in amount than that sued for, was a part of the revenue of the state, and should be paid and received into the state treasury.

APPLICATIONS for writs of mandate. The facts are stated in the head-notes and opinion of the court.

*James M. Allen*, for Petitioner County of San Mateo.

*McKune & George*, for Petitioner Rooney.

*Selden Hetzel*, and *W. W. Foote*, for Respondent Dunn.

*William T. Baggett*, for Respondent Marshall.

Ross, J.—These cases will be considered together. Each is an application for a writ of mandate, directed to the respondents in their official capacity, requiring of them the performance of certain acts demanded of them by the law *if* the money in question is a part of the pub-

lic revenue. The money is now in the hands of the attorney-general of the state, and is $803,582.93 in amount. Of this sum, $140,685.20 was received by him from the defendants in certain actions instituted by certain counties of the state against certain railroad corporations for the recovery of delinquent taxes for the fiscal years 1880–81, 1881–82, and 1882–83; the remaining $662,897.73 was received by him from the defendants in certain actions instituted by the state against the same corporations for delinquent taxes for the fiscal years 1883–84 and 1884–85. In the first class of cases the suits were brought under the act of the legislature approved April 23, 1880, authorizing any county or city and county where taxes are delinquent to sue in its own name for the recovery thereof, "whether the same be for county, or for city and county, and state, purposes, or taxes, or either of them." (Stats. 1880, p. 136.) In the second class of cases the suits were brought under that provision of the Political Code, as amended in 1883, declaring that "after the first Monday of February of each year the controller must begin an action, in the proper court, in the name of the people of the state of California, to collect the delinquent taxes upon the property assessed by the state board of equalization; such suit must be for the taxes due the state, and all the counties, and cities and counties, upon property assessed by the board of equalization, and appearing delinquent upon the duplicate record of apportionment of 'railway assessments.' The demands for state and county and city and county taxes may be united in one action." (Pol. Code, sec. 3670.)

Pursuant to statute, the actions embraced within the first class above alluded to—in number sixty-three—were commenced by the district attorneys of the respective counties in the Superior Court of their respective counties. They were all subsequently transferred to the Circuit Court of the United States. and there came on

regularly for trial,—the attorney-general appearing for
the plaintiffs,—and after trial were submitted to the
court for decision. On the 28th of February, 1884, the
court ordered that judgment be entered in favor of
the defendants in the actions, but before judgment was
so entered, and on the next day,—February 29, 1884,—
stipulation was presented to the court in forty-one of
said sixty-three cases, signed by the attorney for the
defendants, and by the attorney-general of the state for
the plaintiffs, agreeing in effect, that notwithstanding
the decision of the court before announced, that judg-
ment should be entered in favor of the plaintiff in the
respective actions for the face of the taxes. And the
Circuit Court thereupon and upon the oral consent of
the attorneys for the respective parties vacated the order
theretofore entered for judgment in favor of the defend-
ants, and made and entered a judgment in favor of the
respective plaintiffs in said forty-one actions for the face
of the taxes; and therein apportioned the amounts of
the respective sums between the state and the respective
counties. A similar stipulation and judgment was en-
tered in each of the remaining twenty-two cases of the
sixty-three originally commenced by the district attor-
neys. The amounts of the judgments thus rendered
and entered by the Circuit Court of the United States
were subsequently paid to the attorney-general of the
state by the defendants in the actions, and a part of
which is the aforesaid sum of $140,685.20.

Of the actions embraced within the second class
already alluded to, there were pending on the 29th of
September, 1884, in the Circuit Court of the United
States for California, six certain cases prosecuted by the
people of the state of California against the railroad cor-
porations for the collection of delinquent taxes for the
fiscal year 1883–84. Each of said actions was originally
commenced in one of the Superior Courts of the state
by attorneys employed for that purpose by the state con-

troller, but the actions were subsequently transferred on motion of the defendants therein to the Circuit Court. And in that court, on the 29th of September, 1884, the following order was made and entered in each of them:—

"Whereas the defendant in the above-entitled action, while denying all liability upon the cause of action stated in the complaint, pleaded that on the ninth day of November, 1883, it had tendered and offered to pay plaintiff the sum of $—— in United States gold coin in part payment of the tax claimed, with an agreement that the receipt of said sum should not prejudice the plaintiff in any legal rights; and whereas the defendant in said answer averred that it had brought said sum into court, and offered the same to plaintiff, and subjected the said sum to such orders or judgments as the court might make in the premises; and whereas, of the sum so tendered the defendant specially tendered, for the benefit of the state and on the amount claimed by the state, the sum of $——, and on account of the various county taxes it tendered sums as follows, to wit:—

"For the county of —— the sum of $—— (naming the several counties and the several amounts).

"Now, upon motion for attorneys for plaintiff, it is ordered by the court that the defendant, within five days from the date hereof, make said tender good by paying to Edward C. Marshall, attorney-general of the state of California, and one of the attorneys for plaintiff herein, the said sum of $—— United States gold coin (said sum being the amount alleged to have been tendered), to be by the said Marshall, upon the receipt thereof, paid into the state treasury of the state of California, for the benefit of the state of California and of the counties above named, and in the respective amounts above specified; and it is further ordered that neither the payment nor the receipt of said sum shall prejudice or affect any right of either party to this action to maintain or defend it as to the balance claimed in the complaint."

The amounts thus ordered to be paid by the Circuit Court amounted to sixty per cent of the face of the taxes, and aggregated $333,377.10, and were paid to the attorney-general by the defendants in the actions within the five days mentioned in the order.   On or about May 26, 1884, the controller substituted Mr. D. M. Delmas for the attorneys originally employed by him, who has since been the only attorney employed by the controller.   Mr. Delmas did not consent to the order of September 29th, but on the contrary, at all times resisted it.   Subsequently, in each of said six cases, final judgment was entered for the defendants.

Of the actions embraced within the second class first herein alluded to, there were pending on the 16th of September, 1885, in the Circuit Court, five certain other cases prosecuted as were the six cases last referred to, and in which similar proceedings were had, except that the amount ordered to be paid by the Circuit Court to the attorney-general by the respective defendants, and which was accordingly so paid, was the sum of $329,520.63, and was fifty per cent of the face of the taxes.

The foregoing are substantially the facts as presented by the findings.

It is quite clear, we think, that unless we can treat the judgments of the Circuit Court in the first class of cases, and the orders of that court in the second class of cases, directing the payments of the respective sums of money as *void*, we must hold the money paid by virtue of them to the attorney-general of the state as a part of the public revenue.   For in the one instance it was paid under judgments, and in the other instances under orders made and entered by the court in actions regularly pending in it, and there prosecuted for the recovery of certain sums of money, to a person who appeared and was recognized as, and adjudicated to be, one of the attorneys for the plaintiffs; that is to say, the attorney-general of the state. The jurisdiction of the court over the parties and subject-

matter is not questioned. Manifestly, therefore, it cannot be held that any judgment or order made by that court, directing that the plaintiff recover a less sum than that claimed, is void. And not being void, it is conclusive upon us. Nor can we consider the right of the attorney-general to appear as attorney for the people in the actions commenced by the controller. The court in which the cases were heard decided that he had the right so to appear, and recognized him as such attorney, and its judgment in that regard is as binding as in any other. So, too, with respect to the stipulations upon which the judgments in the one class of cases and the orders in the other class were made and entered. It is not for us to say that they were insufficient as a basis upon which to enter the judgments and orders. That was a matter for the court having jurisdiction of the case, subject to correction on appeal if error was committed.

We have therefore the case of an attorney who has received certain moneys under judgments and orders recovered by him in actions he was prosecuting. It legally follows, we think, that the money so received is the property of those whom he represented in receiving it.

Let the writs issue as prayed for in so far as concerns the moneys received by the attorney-general under the orders made in the cases prosecuted for the delinquent taxes for the fiscal years 1883–84 and 1884–85, and in so far as concerns the moneys by him received for the state under the judgments rendered in the actions prosecuted for the delinquent taxes for the fiscal years 1880–81, 1881–2, and 1882–83.

MORRISON, C. J., MYRICK, J., SHARPSTEIN, J., McKINSTRY, J., and McKEE, J., concurred.